190 So.2d 666 (1966)
Jack W. DYESS, Plaintiff-Appellant,
v.
Hugh L. CARAWAY d/b/a Hugh L. Caraway Veterinary Clinic, Defendant-Appellee.
No. 10646.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1966.
Dan A. Spencer, Shreveport, Dennis R. Whalen, Baton Rouge, for appellant.
Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
GLADNEY, Judge.
In this suit in tort Jack W. Dyess claims damages for the death of five pedigreed Norwegian Elkhound puppies allegedly resulting from the negligence of defendant, Hugh L. Caraway, a duly licensed veterinarian practicing in Caddo Parish.
After trial on the merits, judgment was rendered rejecting plaintiff's demands and he has appealed.
The five puppies referred to were the litter of a female registered Norwegian Elkhound dog named Nor-Chon Sonja. On January 7, 1964, plaintiff, owner of Sonja and her puppies, brought to defendant's clinic one of the puppies, at that time five weeks old. A few days prior thereto, on January 4, the defendant had examined specimens of stools from the puppies for detection of intestinal parasites. The test was negative.
The puppy admitted on January 7 for treatment exhibited fast labored breathing, abdominal pains and other symptoms and was hospitalized until the 11th of January. Various tests were made which resulted in a diagnosis of tapeworms and a parasite known as coccidia. Sonja was also examined on the 8th of January and was found to have tapeworms and coccidia. Sulfaquanadine tablets were dispensed and Sonja and her puppies at home were administered the tablets, a recognized proper drug for coccidia. The hospitalized puppy was not given sulfa-quanadine for the reason, as stated by Dr. Caraway, that the puppy was very sick and not strong enough to withstand its effect. Supportative treatment was given to strengthen the physical condition of the puppy. After response *667 was noted the puppy was returned to the owner following the administration of one tablet of sulfa-quanadine and instructions given to administer ½ tablet daily.
On the day following its discharge from the hospital the puppy was returned to the defendant evidencing spells of vomiting and poor appetite, whereupon the administration of sulfa-guanadine was stopped and supporting treatment renewed through the 14th. After improvement the puppy was again discharged and returned to sulfaguanadine. On the following day the puppy was again returned to the hospital and again placed on the supporting treatment. It died on January 17. A post-mortem revealed findings of coccidia. Treatment of the mother dog and the other puppies continued through March 6, 1965 at which time Sonja was tested with negative results.
On March 9 Sonja was returned to the hospital with fever of 103° and for a poor appetite. Dr. Caraway observed a number of diseased conditions, including abscessed anal glands, otitis, which is an inflammation of the ears, and pharyngitis, an irritation of the throat or pharynx. Treatment was given and as a result on the following day her temperature dropped back to 102°, 101½° or 102° being considered as normal. The dog was thereupon discharged and the owner given a tablet form of drug to be administered at home. Again on March 17 Sonja was admitted for treatment. Her temperature was 102½°; she was found to have a slight conjunctivitis and metritis, which indicated a possible infection of the uterus. Other tests were given until the 19th, at which time the dog's condition was so improved that it was discharged. This date was the last day Dr. Caraway saw any of the plaintiff's dogs. On March 20 Dr. Dudley M. Glenn, a licensed and practicing veterinarian, diagnosed Sonja as having distemper and after seeing the puppies he also made a similar diagnosis as to them. Some time thereafter the remaining four puppies of the litter died.
During the course of the trial plaintiff called as his witness Dr. Glenn, who testified as to whether Dr. Caraway was negligent, vel non, in his professional treatment, and in addition similar testimony was given by Drs. James Basco and Dr. Theodore F. Bryson, both qualified and competent veterinarians practicing in Caddo Parish, Louisiana. All three of these expert witnesses testified that in their opinion the treatment as given by Dr. Caraway was not improper.
As a basis for this appeal appellant assigns error to the judgment of the trial court in failing to find as a fact that the death of the puppies was due to the professional negligence of the defendant. Also the court is charged with error in disregarding the expert witnesses' opinion, and in failing to apply the doctrine of res ipsa loquitur. Negligence in the treatment of the puppy which died on March 17, 1965 of coccidia is alleged to have been caused by failure to make proper diagnostic tests; in failing to give proper treatment for coccidia from which the puppy died, although the defendant had professional knowledge that the puppy was suffering from that disease; and in failing to exercise the standard of care required by the average prudent veterinarian in the community. The same allegations of negligence are made with respect to the treatment of Sonja and the remaining puppies, plaintiff asserting that the defendant was negligent in failing to diagnose and treat the dogs for distemper. Thus, the principal issue presented is whether Dr. Caraway exercised the standard of care required of and practiced by the average reasonably prudent, competent veterinarian in the community.
Was a proper diagnosis of coccidia made and proper treatment given to the puppy hospitalized on January 7, 1965? Dr. Caraway testified that he gave supportative treatment in order to insure that the puppy which he found to be very sick could accumulate enough strength to withstand treatment for the disease. Such treatment, he said, was given as soon as advisable, but *668 the condition of the puppy had advanced to such a serious extent that treatment could not prevent its death.
Dr. Glenn, the expert witness called by plaintiff, testified he could not say the dog's death would not have occurred had a different treatment been given. We find, therefore, that plaintiff has failed to prove negligent professional treatment of this puppy by the defendant.
When Sonja was discharged from the hospital on March 19 her owner was instructed to contact Dr. Caraway if there was any change in her condition. After the lapse of time Sonja appears to have recovered and plaintiff before this court does not assert any claims for damages as a result of the treatment given Sonja. He does allege, however, that due to the failure of Dr. Caraway to diagnose and treat Sonja for distemper, it was transmitted to the four puppies and caused their death. With respect to this contention, the defense asserts:
That distemper is one of the most complex and easily confused of all dog diseases; that Dr. Caraway was justified in assuming that Sonja, who was two years old or over, had been immunized; that distemper is an air-borne disease and can be contracted anywhere; that plaintiff has not established the puppies actually died from distemper or that they contracted it from their mother, and that Sonja may not have contracted distemper until the day after she had been discharged from defendant's hospital.
The record and the testimony of the several experts, including that of Dr. Glenn, disclose that Dr. Caraway did exercise the degree of skill ordinarily employed under similar circumstances by the members of his own profession in good standing in his community.
It is generally recognized that such is the standard of care applicable to members of the medical profession and to practitioners of veterinary medicine. 41 Am.Jur. Verbo, Physicians and Surgeons, § 88, p. 206; also see Anno. Veterinarian's liability for malpractice, 38 ALR2d 503. The rule applicable to physicians and surgeons is so stated in Meyer v. Saint Paul-Mercury Indemnity Company, 225 La. 618, 73 So.2d 781 (1953); La.App., 61 So.2d 901 (Orl.Cir. 1952):
"A physician, surgeon or dentist, according to the jurisprudence of this court and of the Louisiana Courts of Appeal, is not required to exercise the highest degree of skill and care possible. As a general rule it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case." (See authorities cited therein)
[73 So.2d 781, 782]
In the Meyer case the question was raised as to application of the doctrine of res ipsa loquitur. The Court of Appeal decision, supra, held that the circumstances of the case (involving a dislodged tooth which entered the lung cavity) came under the legal principle, and therefore placed upon the defendant the burden of proving freedom from negligence. The Supreme Court on application for rehearing in Meyer, reaffirmed its original opinion, and in doing so observed with respect to res ipsa loquitur:
"The rule makes it incumbent on the physician, surgeon or dentist who becomes defendant in a malpractice case to show that he is possessed of the required skill and competence indicated and that in applying that skill to the given case he used reasonable care and diligence along with his best judgment. The rule therefore may be said to bear some relation to the doctrine of res ipsa loquitur which places the burden on a defendant having control of the dangerous instrumentality which caused an *669 accident to show his freedom from negligence in a case where such accident would not ordinarily have occurred had proper care and use been made of the instrumentality. As stated by the Court of Appeal in its opinion in this case, however, that does not mean that the defendant must show just what was the cause of the occurrence."
[73 So.2d 781, 786]
In the Court of Appeal decision in Meyer v. Saint Paul-Mercury Indemnity Company, supra, 61 So.2d at page 904, the court made this pronouncement:
"* * * it must be conceded at the outset that it is well settled that the doctrine can not have application where there is involved the merits of a diagnosis or of scientific treatment. No such professional person should be required at his peril to explain why any particular diagnosis was not correct or why any particular scientific treatment had not produced the desired result."
[61 So.2d 901, 904]
We find no occasion to give application to res ipsa loquitur in the instant case, primarily for the reason that the instant case involves a question of diagnosis and treatment of a professional nature which in itself requires judgment. The professional conduct of Dr. Caraway did not involve any unusual occurrence from which a presumption of negligence arises, such as the dislodged tooth in the Meyer case, or in such instances as where a sponge or instrument has been left in the body. Furthermore, except as in the case of the first puppy, the other dogs were under the treatment of Dr. Glenn and plaintiff and therefore were not exclusively under the control of Dr. Caraway during the treatment.
It is our finding that the record does not support a conclusion of negligence on the part of the defendant. Plaintiff has failed to make out his case by a preponderance of the evidence. It is therefore ordered that the judgment be affirmed at appellant's cost.